**[NOT YET SCHEDULED FOR ORAL ARGUMENT]**
**No. 15-5113**

_____

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**ROBERT GORDON,**

*Plaintiff-Appellant,*

**v.**

**LORETTA E. LYNCH,** *et al.*,

*Defendant-Appellee.*

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civ. Action No. 1:10-cv-01092**

_____

**PRINCIPAL BRIEF FOR APPELLANT**

_____

**Aaron M. Streett**
*Counsel of Record*
Baker Botts L.L.P
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1855
aaron.streett@bakerbotts.com

**Craig A. Schwartz**
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
(202) 639-7834
craig.schwartz@bakerbotts.com

*Counsel for Appellant*
*Robert Gordon*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

I.  **PARTIES**

A.  **Plaintiff-Appellant:**

Robert Gordon, an enrolled member of the Seneca Nation of Indians

B.  **Defendants-Appellees:**

Loretta E. Lynch, the Attorney General of the United States of America, in her official capacity (substituted for Eric H. Holder, Jr., her predecessor);

The United States Department of Justice;

B. Todd Jones, the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, in his official capacity (substituted for Kenneth Melson, his predecessor);

The Bureau of Alcohol, Tobacco, Firearms and Explosives;

Patrick R. Donahoe, the Postmaster General of the United States, in his official capacity (substituted for John "Jack" Potter, his predecessor);

The United States Postal Service

C.  ***Amici* before the district court**

National Association of Convenience Stores;

New York Association of Convenience Stores;

Campaign for Tobacco-Free Kids;

American Cancer Society;

i

American Cancer Society Cancer Action Network;

American Legacy Foundation;

American Lung Association;

City of New York

**D.    *Amici* before this Court in Case No. 10-5227**

State of Idaho

**E.    *Amici* before this Court in Case Nos. 12-5031 and 12-5051**

American Cancer Society;

American Cancer Society Cancer Action Network;

American Heart Association;

American Legacy Foundation;

American Lung Association;

Campaign for Tobacco-Free Kids;

City of New York;

District of Columbia;

National Association of Convenience Stores;

New York Association of Convenience Stores;

States of Alaska, Arizona, Arkansas, California, Colorado, Connecticut,

      Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas,

      Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota,

Mississippi, Nebraska, Nevada, New Hampshire, New Mexico,

New York, North Carolina, North Dakota, Ohio, Oklahoma,

Pennsylvania, Rhode Island, South Carolina, South Dakota,

Tennessee, Utah, Vermont, Washington, West Virginia, and

Wyoming

## II.    RULINGS UNDER REVIEW

Counsel for Appellant is not aware of any other cases involving Appellant currently pending before this Court.

## III.    RELATED CASES

This matter was previously on appeal before this Court in *Gordon v. Holder*, Nos. 10-5227, 12-5031 and 12-5051.  The latter two appeals were consolidated.


Dated:  August 17, 2015

/s/ Craig A. Schwartz
Craig A. Schwartz
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
(202) 639-7834
craig.schwartz@bakerbotts.com

*Counsel for Appellant*
*Robert Gordon*

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

GLOSSARY ........................................................................................ xi

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUE ............................................................... 2

PERTINENT STATUTORY PROVISIONS .............................................. 3

STATEMENT OF THE CASE ................................................................ 4

    A.    Introduction ........................................................................ 4

    B.    Background and Procedural History ......................................... 5

SUMMARY OF THE ARGUMENT ........................................................ 9

    A.    Constitutional Mootness ....................................................... 9

    B.    Prudential Mootness .......................................................... 11

STANDARD OF REVIEW ................................................................... 12

    A.    Constitutional Mootness ..................................................... 12

    B.    Prudential Mootness .......................................................... 12

ARGUMENT .................................................................................... 13

I.    THE CASE IS NOT MOOT BECAUSE MR. GORDON CURRENTLY
    SUFFERS BACK-TAX OBLIGATIONS TO STATES AND LOCALITIES
    WHERE HE MADE DELIVERY SALES WHILE THE PRELIMINARY
    INJUNCTION WAS IN PLACE ......................................................... 13

    A.    The Government's "Heavy Burden" to Show Mootness ................... 13

    B.    The Dissolved Preliminary Injunction Causes Present Harm That
        Prevents Mootness ............................................................. 15

    C.    The case is not moot because immediate back tax obligations result
        from Mr. Gordon's past sales in violation of the PACT Act's Tax
        Provisions. ....................................................................... 17

II.    THE CASE IS NOT MOOT BECAUSE THERE REMAINS A
    MEANINGFUL RISK OF SANCTIONS UNDER THE PACT ACT FOR
    PRIOR DELIVERY SALES AS WELL AS ADVERSE COLLATERAL
    CONSEQUENCES IMPOSED BY THIRD PARTIES. ............................... 20

iv

A.    The government failed in its burden to negate the risk of federal prosecution or civil punishment for Mr. Gordon's prior actions. .......21

B.    The district court failed to recognize that, were a declaratory judgment in effect, there would be no basis for state and local sanctions against the Gordons in the first place. ...........................................................31

C.    There is a meaningful risk of adverse third-party effects that flow as collateral consequences from allowing the PACT Act to take effect against Mr. Gordon............................................................................33

III.   THE DISTRICT COURT ERRED BY DISMISSING THIS CASE AS PRUDENTIALLY MOOT. ............................................................41

A.    For the reasons already provided concerning constitutional mootness, this case is not prudentially moot either..............................................41

B.    *Penthouse International* is wholly inapposite.....................................43

C.    Prudential mootness is a question of equity, and the equities here heavily favor Mr. Gordon.................................................................47

D.    Prudential mootness is generally predicated on the defendant's changed conduct—not the plaintiff's changed conduct.....................50

E.    In light of the Supreme Court's recent decisions in *Lexmark* and *Driehaus*, this Court should abandon prudential mootness altogether.51

CONCLUSION ....................................................................................55

CERTIFICATE OF COMPLIANCE .....................................................56

# <u>TABLE OF AUTHORITIES</u>[1]

**Page(s)**

### CASES

*A. L. Mechling Barge Lines, Inc. v. United States*,
   368 U.S. 324 (1961)............................................................................41

*Allen v. Wright*,
   468 U.S. 737 (1984)............................................................................52

*Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan*,
   870 F.2d 723 (D.C. Cir. 1989)........................................................37, 38

*Chafin v. Chafin*,
   133 S. Ct. 1017 (2013)......................................................................15, 29

*Chamber of Commerce of U.S. of Am. v. U.S. Dep't of Energy*,
   627 F.2d 289 (D.C. Cir. 1980) (per curiam).......................................12, 50, 52

*Citizen Ctr. v. Gessler*,
   770 F.3d 900 (10th Cir. 2014) ...............................................................42

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)................................................................................30

*Clarke v. United States*,
   915 F.2d 699 (D.C. Cir. 1990) (en banc)................. 21, 22, 23, 24, 25, 26, 28, 29

*Cnty. of L.A. v. Davis*,
   440 U.S. 625 (1979)................................................................................15

*Commonwealth Brands, Inc. v. Morgan*,
   No. G-2009-1681, 2009 WL 5332834 (Miss. Ch. Dec. 11, 2009)....................19

*ConnectU LLC v. Zuckerberg*,
   522 F.3d 82 (1st Cir. 2008).......................................................................35

*Conservation Law Found. v. Pritzker*,
   37 F. Supp. 3d 254 (D.D.C. 2014)..............................................................50

---

[1] The authorities upon which Appellant chiefly relies are marked with asterisks.

*Decker v. Nw. Envtl. Def. Ctr.,
   133 S. Ct. 1326 (2013)............................................................9, 15, 28, 42

Del Monte Fresh Produce Co. v. United States,
   570 F.3d 316 (D.C. Cir. 2009)............................................................12

Deutsche Bank Nat'l Trust Co. v. F.D.I.C.,
   744 F.3d 1124 (9th Cir. 2014) ............................................................12

*Edgar v. MITE Corp.,
   457 U.S. 624 (1982)............................................ 16, 17, 21, 22, 24, 25

Fed. Corr. Complex Coleman, Fla. v. Fed. Labor Relations Auth.,
   737 F.3d 779 (D.C. Cir. 2013)............................................................9, 15

*Foretich v. United States,
   351 F.3d 1198 (D.C. Cir. 2003)............................ 12, 20, 40, 42, 45, 46, 49

Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.,
   528 U.S. 167 (2000)............................................................30, 49

Gay Rights Coal. v. Georgetown Univ.,
   536 A.2d 1 (D.C. 1987) ............................................................23

Ginsberg v. State of N.Y.,
   390 U.S. 629 (1968)............................................................34, 35

Gordon v. Holder,
   632 F.3d 722 (D.C. Cir. 2011)............................................................4

Gordon v. Holder,
   826 F. Supp. 2d 279 (D.D.C. 2011)............................................4, 6, 43, 48, 49

Gordon v. Holder,
   721 F.3d 638 (D.C. Cir. 2013)............................................5, 7, 14, 43, 47, 48

Gordon v. Holder,
   ___ F. Supp. 3d ___, 2015 WL 1360941 (D.D.C. Mar. 26, 2015).5, 8, 15, 28, 32

Hemi Grp., LLC v. City of N.Y.,
   559 U.S. 1 (2010)............................................................20, 31

vii

*In re AOV Indus., Inc.*,
    792 F.2d 1140 (D.C. Cir. 1986) ........................................................................41

*In re Federated Dep't Stores, Inc.*,
    44 F.3d 1310 (6th Cir. 1995) ..........................................................................35

*Justin v. Jacobs*,
    449 F.2d 1017 (D.C. Cir. 1971) ..............................................................33, 37

*Kentucky v. U.S. ex rel. Hagel*,
    759 F.3d 588 (6th Cir. 2014) ....................................................................13, 53

*Kifafi v. Hilton Hotels Ret. Plan*,
    701 F.3d 718 (D.C. Cir. 2012) ........................................................................12

*Kirkland v. Nat'l Mortg. Network, Inc.*,
    884 F.2d 1367 (11th Cir. 1989) ......................................................................35

*Ky. Riverkeeper, Inc. v. Rowlette*,
    714 F.3d 402 (6th Cir. 2013) ..........................................................................42

*\*Lexmark Int'l Inc. v. Static Control Components Inc.*,
    134 S. Ct. 1377 (2014) ..........................................................11, 13, 52, 53

*Liner v. Jafco, Inc.*,
    375 U.S. 301 (1964) ..........................................................................................13

*MBIA Ins. Corp. v. F.D.I.C.*,
    816 F. Supp. 2d 81 (D.D.C. 2011), *aff'd*, 708 F.3d 234 (D.C. Cir. 2013) .........42

*\*Mesa Petroleum Co. v. Cities Service Co.*,
    715 F.2d 1425 (10th Cir. 1983) .................................... 21, 22, 24, 25, 26, 28, 29

*Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*,
    983 F.2d 485 (3d Cir. 1992) ............................................................................35

*NYCTL 1996-1 Trust v. 209 Holding Corp.*,
    704 N.Y.S. 2d 824 (N.Y. App. Div. 2000) ......................................................40

*Pasquantino v. United States*,
    544 U.S. 349 (2005) ..................................................................................18, 40

*Penthouse Int'l, Ltd. v. Meese*,
  939 F.2d 1011 (D.C. Cir. 1991)........................................... 12, 42, 43, 44, 46, 50

*Red Earth LLC v. United States*,
  728 F. Supp. 2d 238 (W.D.N.Y. 2010).......................................7, 20, 43, 48, 49

*Red Earth LLC v. United States*,
  657 F.3d 138 (2d Cir. 2011) (per curiam) .........................................7, 43, 48, 49

*Sibron v. New York*,
  392 U.S. 40 (1968)........................................................................33, 36

*Sissel v. U.S. Dep't of Health & Human Servs.*,
  760 F.3d 1 (D.C. Cir. 2014)........................................................20

*Spencer v. Kemna*,
  523 U.S. 1 (1998)........................................................................33

*Sprint Commc'ns, Inc. v. Jacobs*,
  134 S. Ct. 584 (2013)........................................................51, 52, 53

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2234 (2014)........................................................11, 13, 52, 53

*Thomas More Law Ctr. v. Obama*,
  651 F.3d 529 (6th Cir. 2011) ........................................................20

*Thompson v. Mazo*,
  421 F.2d 1156 (D.C. Cir. 1970)........................................................28, 35, 36

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980)........................................................................14

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953)........................................................27, 41, 50

**STATUTES**

15 U.S.C. § 376a(a)(3)(A) ................................................................6

15 U.S.C. § 376a(a)(3)(B)................................................................6

15 U.S.C. § 376a(a)(4)........................................................................6

15 U.S.C. § 376a(d)(1) ..................................................................................6

15 U.S.C. § 377 ....................................................................................6, 20

15 U.S.C. § 378(b) ...............................................................6, 20, 27, 45

15 U.S.C. § 378(c)(1)(A) ..................................................................6, 20

15 U.S.C. § 378(c)(4) ...........................................................................6, 7

28 U.S.C. § 516 ................................................................................27, 45

Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-
148 (Mar. 23, 2010) ....................................................................20

Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 376a(a)(3)(A)–(B),
376a(a)(4), and 376a(d) ............................................................2, 4

Pub. L. No. 100-462, § 145 (1988) ...................................................23

## OTHER AUTHORITIES

Matthew I. Hall, *The Partially Prudential Doctrine of Mootness*, 77 GEO.
WASH. L. REV. 562 (2009) ........................................................34

# <u>GLOSSARY</u>

ATF                U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives

FLRA               U.S. Federal Labor Relations Authority

PACT Act           The Prevent All Cigarette Trafficking Act of 2009,

                   Pub. L. No. 111-154 (Mar. 31, 2010)

                   (codified at 15 U.S.C. §§ 375-378)

PPACA              Patient Protection and Affordable Care Act

SFTA               Seneca Free Trade Association

Tax Provisions     15 U.S.C. §§ 376a(a)(3)(A)-(B), 376a(a)(4), and 376a(d)

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this action under 28 U.S.C. § 1331, as it involves a constitutional challenge to a federal statute.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, as the district court, on March 26, 2015, dismissed Mr. Gordon's complaint as moot.  On April 16, 2015, Mr. Gordon timely appealed the district court's March 26, 2015 final order.

## STATEMENT OF THE ISSUE

Whether Mr. Gordon's constitutional challenge to the taxation provisions of the Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 376a(a)(3)(A)–(B), 376a(a)(4), and 376a(d), is moot, even though his past cigarette sales mean that he faces (i) immediate monetary liability to states and localities whose taxes were made applicable by the challenged provisions of the Act; and (ii) potential criminal and civil sanctions under the Act, and the Government has proffered nothing more than a single law-enforcement official's statement that he does not "current[ly]" "inten[d]" to "recommend" action against Mr. Gordon.

## <u>PERTINENT STATUTORY PROVISIONS</u>

The pertinent provisions of the PACT Act have been reproduced in a Statutory Addendum filed with this brief.

## STATEMENT OF THE CASE[2]

### A.    *Introduction*

On June 28, 2010, Plaintiff-Appellant Robert Gordon brought an action in the U.S. District Court for the District of Columbia seeking, among other things, to invalidate certain tax provisions ("Tax Provisions") in the Prevent All Cigarette Trafficking Act ("PACT Act")—codified at 15 U.S.C. §§ 376a(a)(3)(A)-(B), 376a(a)(4), and 376a(d)—that violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.  JA 59-61.  Mr. Gordon sought a declaratory judgment that the Tax Provisions are facially unconstitutional for subjecting non-resident tobacco sellers to full state and local excise taxes without regard to whether the retailer has minimum contacts with the taxing jurisdiction. JA 62.  Mr. Gordon also sought a temporary restraining order and preliminary and permanent injunctions against enforcement of the Tax Provisions.  *Id.*[3]

---

[2] Citations to the joint appendix are designated "JA __."

[3] To date, there have been five written decisions in this litigation, including four published decisions.  All were captioned *Gordon v. Holder*:

> (i) JA 40-41 (D.D.C. June 29, 2010) (hereinafter "*Gordon I*");
>
> (ii) 632 F.3d 722 (D.C. Cir. 2011) (hereinafter "*Gordon II*");
>
> (iii) JA 153-80, 826 F. Supp. 2d 279 (D.D.C. 2011) (hereinafter "*Gordon III*");

### B.    *Background and Procedural History*

Mr. Gordon is an enrolled member of the Seneca Nation of Indians.  JA 156. Along with his wife,  Marcia, Mr. Gordon owned and operated a tobacco business on the Allegany Reservation, for which Mrs. Gordon handled the day-to-day operations.  JA 32.  In addition to its physical storefront on the Reservation, the business sold mail-order cigarettes over the telephone and Internet.  *Id.*

Before adoption of the PACT Act, when customers ("delivery customers") mail-ordered cigarettes from sellers in another state ("delivery sellers"), the delivery customers were responsible for remitting any excise taxes owed on the cigarettes to their state and local governments.  JA 47-48 ¶¶ 24-27; *Gordon IV*, 721 F.3d at 641-42.  The Tax Provisions shifted this excise-tax burden to delivery sellers, who could choose to factor state and local taxes into the price charged for mail-order cigarettes.  JA 48 ¶¶ 27-28; *Gordon IV*, 721 F.3d at 642.

The Provisions require a delivery seller to pay all state and local taxes as if it were located in the buyer's state, beginning with the first sale into the taxing jurisdiction, regardless of whether the seller has minimum contacts with, or

---

(iv) 721 F.3d 638 (D.C. Cir. 2013) (hereinafter "*Gordon IV*"); and

(v) JA 206-15, ___ F. Supp. 3d ___, 2015 WL 1360941 (D.D.C. Mar. 26, 2015) (hereinafter "*Gordon V*").

receives benefits from, the taxing jurisdiction.  15 U.S.C. §§ 376a(a)(3)(A)-(B), 376a(a)(4), 376a(d)(1); *see also* JA 48 ¶ 30; JA 189 ¶ 4.  This placed a "significant" burden on delivery sellers like Mr. Gordon, who now needed to monitor and comply with varying and ever-changing tax rates for "hundreds or thousands" of tax jurisdictions due to the Provisions.  JA 190 ¶ 5; *see also* JA 47-48 ¶¶ 26, 29.

Penalties for violating the Tax Provisions include both civil and felony criminal sanctions.  15 U.S.C. §§ 377, 378(b).  Additionally, the various states and localities where non-compliant delivery sales were made may pursue civil penalties or money damages of their own.  15 U.S.C. § 378(c)(1)(A).  This is in addition to any back tax obligations incurred to those jurisdictions, as taxing jurisdictions retain full authority to pursue relief under state law and in state court. *See* 15 U.S.C. § 378(c)(4).

After an initial dismissal and subsequent reversal by this Court, the district court preliminarily enjoined enforcement of the Tax Provisions.  *See Gordon III*, 826 F. Supp. 2d 279.[4]  This Court affirmed, and remanded to the district court for

---

[4] A preliminary injunction of the Tax Provisions was also in effect from July 30, 2010 to June 7, 2013 on account of parallel litigation in *Red Earth LLC v. United States*. *See* No. 1:10-cv-00530 (W.D.N.Y.).  *Red Earth* was a consolidated lawsuit by another Seneca Indian, his delivery seller tobacco business (Red Earth), and the Seneca Free Trade Association ("SFTA").  Mr. Gordon's tobacco business was a member of the SFTA, as was Red Earth.  As in this case, the *Red Earth* plaintiffs

consideration of the requested declaratory and permanent injunctive relief. *See Gordon IV*, 721 F.3d 638.[5]  Mr. Gordon continued to make delivery sales without complying with the Tax Provisions throughout the majority of the litigation.

---

secured a preliminary injunction on Due Process grounds against enforcement of the Tax Provisions. *See* 728 F. Supp. 2d 238 (W.D.N.Y. 2010) (hereinafter "*Red Earth I*"). Also as in this case, the court of appeals subsequently affirmed the preliminary injunction and remanded for consideration of a permanent injunction. *See* 657 F.3d 138 (2d Cir. 2011) (per curiam) (hereinafter "*Red Earth II*"). On remand, in April 2013, the SFTA stipulated to dismissal of its participation in the *Red Earth* litigation. *See* No. 1:10-cv-00530 (W.D.N.Y.), ECF Nos. 100 (Apr. 9, 2013) & 101 (Apr. 17, 2013). Subsequently, in June 2013, the remaining plaintiffs stipulated to dismissal of the case, and to dissolution of the preliminary injunction. *See id.* ECF Nos. 105 (June 6, 2013) & 106 (June 7, 2013). As discussed *infra* in section III.C, the *Red Earth* plaintiffs ultimately dropped their challenges to the Tax Provisions due to financial hardships caused by the PACT Act as well as associated litigation costs.

[5] The merits in this case turn on whether "the PACT Act violates nonresident tobacco retailers' due process rights . . . by subjecting them to taxes in state and local forums without regard to whether they have minimum contacts with the taxing jurisdiction." *Gordon IV*, 721 F.3d at 645 (citation and internal quotation marks omitted) (alteration in original). The Court recognized that this presents two questions:

> First, does the Due Process Clause require minimum contacts between the state or local taxing authority and the nonresident seller even when the federal government is the source of the seller's duty to collect taxes?

> And second, if due process requires minimum contacts with the state or local taxing jurisdiction, does a single delivery sale to a buyer in that jurisdiction create minimum contacts?

*Id.*

In early 2013, Mr. Gordon closed his tobacco store and ceased making delivery sales due to the financial strain caused by the PACT Act.  JA 184 ¶ 4.  At that time, Mr. Gordon intended to reopen his business if he prevailed in this litigation.  JA 184 ¶¶ 5-7.  However, due to his declining health and finances, Mr. Gordon no longer intends to reopen his store or to resume making delivery sales upon the conclusion of this litigation.  JA 190 ¶ 11.

On remand, the parties agreed to a stipulated record and briefing schedule for Mr. Gordon's request for a declaratory judgment and permanent injunction.  JA 186-88.  The government submitted a declaration from Joseph Fox,[6] which provides:  "Based on all evidence currently known to ATF, ATF has no intention to seek or recommend enforcement action against Gordon under the PACT Act."  JA 200 ¶ 35.

The district court dismissed Mr. Gordon's challenge to the Tax Provisions as both constitutionally and prudentially moot.  *See Gordon V*, 2015 WL 1360941.  Mr. Gordon timely appealed.  JA 217.

---

[6] Joseph Fox is the present Chief of the Alcohol and Tobacco Enforcement Branch of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

# SUMMARY OF THE ARGUMENT

### A.      *Constitutional Mootness*

A party asserting mootness must establish that "it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1335 (2013) (citation and internal quotation marks omitted).  This entails a "heavy burden" to establish "that there is no reasonable expectation" the alleged injury will recur.  *Fed. Corr. Complex Coleman, Fla. v. Fed. Labor Relations Auth.*, 737 F.3d 779, 783 (D.C. Cir. 2013) (citations and internal quotation marks omitted).

During the pendency of this litigation, Mr. Gordon engaged in delivery sales without paying state and local excise taxes that the PACT Act imposed on him. Consequently, granting Mr. Gordon's requested relief would provide effectual relief in at least two ways, and the Government has not carried its heavy burden to show otherwise.

First, the dissolution of the preliminary injunction caused Mr. Gordon to immediately owe back-taxes to those states and localities into which he made delivery sales.  A declaratory judgment that the Tax Provisions are unconstitutional would eliminate that harm.  The district court erred by ignoring this present, concrete harm, which is akin to an outstanding award for money damages to each of the affected states and localities.  This is distinct from the separate harm relating

9

to the risk that local, state, or federal governments will sue Mr. Gordon under the PACT Act for civil and criminal sanctions for the prior delivery sales.

Second, Mr. Gordon faces a meaningful risk of civil or criminal sanctions for his prior delivery sales.  In the heat of the district court's remand proceedings, the government provided a declaration from a single ATF official expressing his "current" "intent" not to "recommend" enforcement proceedings against Mr. Gordon.  This Court and other courts have made clear that such an intentionally equivocal declaration—which does not bind the current Justice Department or even future ATF officials—cannot carry the government's burden to demonstrate mootness.

Mr. Gordon also faces a non-negligible risk of sanctions pursued by state and local governments for his past delivery sales.  In fact, the City of New York has already civilly pursued Mr. Gordon under the PACT Act, specifically excepting from its compliant relief under the then-enjoined Tax Provisions.  *See City of N.Y. v. Gordon*, No. 12-cv-4838, Am. Compl., ECF No. 32, at 9 ¶¶ 25-27, 40 ¶ b (S.D.N.Y. Sept. 28, 2012).  A declaratory judgment for Mr. Gordon would eliminate the basis for states and localities to seek sanctions under the Tax Provisions, as tax liability would not be shifted to Mr. Gordon in the first place.

10

**B.** *Prudential Mootness*

Nor is this case prudentially moot. Prudential mootness, to the extent it remains a valid doctrine, cannot support a court's refusal to exercise its equitable powers where a favorable judgment "will provide a real measure of redress." *Foretich v. United States*, 351 F.3d 1198, 1216 (D.C. Cir. 2003) (citation omitted). The district court mistakenly relied on *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991), a case where the plaintiff's only remaining interest was to assure *third parties* they would not be prosecuted.

Additionally, the equities here heavily favor Mr. Gordon. It is fundamentally inequitable, especially in the context of a challenge to an unconstitutional statute, that after more than five years of litigation in six separate proceedings, and hundreds of thousands of dollars in legal fees, the case is rendered moot because the challenged statute drives the plaintiff out of business (as it similarly drove the *Red Earth* plaintiffs into penury).

Finally, the Supreme Court's recent decisions in *Lexmark International Inc. v. Static Control Components Inc.*, 134 S. Ct. 1377 (2014), and *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2234 (2014), which limit a court's ability to apply independent policy judgment to shirk its "virtually unflagging" mandate to reach the merits of an otherwise justiciable case, suggest that this Court should abandon prudential-mootness doctrine altogether. For these reasons, this case is not

11

prudentially moot.

## STANDARD OF REVIEW

### A.     *Constitutional Mootness*

This Court reviews *de novo* mootness dismissals for lack of Article III subject matter jurisdiction.  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) (citation omitted).

### B.     *Prudential Mootness*

This Court has not squarely articulated the standard of review for prudential-mootness dismissals.  On the one hand, circuit precedent recognizes that prudential mootness implicates the court's discretion to grant equitable relief.  *Chamber of Commerce of U.S. of Am. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) (per curiam); *see also Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 724 n.3 (D.C. Cir. 2012) (recognizing a court's discretion to dismiss for prudential mootness, but applying *de novo* review to constitutional-mootness dismissals).

However, this Court has never expressly adopted an abuse of discretion standard.  As such, the prevailing standards of sister circuits are instructive.  The Ninth Circuit applies a *de novo* standard of review to determinations of prudential mootness.  *See Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*, 744 F.3d 1124, 1134 (9th Cir. 2014) ("We review de novo whether Deutsche Bank's claims are prudentially moot." (citation omitted)).  There are good reasons to think this is

12

correct.

As discussed in greater detail below, the U.S. Supreme Court's recent decisions in *Lexmark International Inc. v. Static Control Components Inc.*, 134 S. Ct. 1377, 1386-88 (2014), and *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2234, 2347 (2014), which respectively reject the related concepts of "prudential standing" and "prudential ripeness," suggest that this Court should abandon prudential-mootness doctrine altogether and adhere exclusively to Article III mootness standards.  For just this reason, in *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595-96 n.3 (6th Cir. 2014), the Sixth Circuit recently questioned the continuing validity of the prudential-mootness doctrine.   Given the questions surrounding the validity of prudential mootness, *de novo* review of all mootness determinations—both prudential and constitutional—is most appropriate.

## ARGUMENT

## I.    THE CASE IS NOT MOOT BECAUSE MR. GORDON CURRENTLY SUFFERS BACK-TAX OBLIGATIONS TO STATES AND LOCALITIES WHERE HE MADE DELIVERY SALES WHILE THE PRELIMINARY INJUNCTION WAS IN PLACE.

### A.    *The Government's "Heavy Burden" to Show Mootness*

Constitutional mootness derives from the case or controversy requirement of Article III of the U.S. Constitution.  *See Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964).  A case is constitutionally moot where:  (i) "the issues presented are no longer live"; or (ii) "the parties lack a legally cognizable interest in the outcome."

13

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (citation and internal quotation marks omitted). The purpose of constitutional mootness "is to assure that the case is in a form capable of judicial resolution." *Id.* at 403. The Supreme Court has referred to the circumstances giving rise to constitutional mootness respectively as "issue" mootness and "personal stake" mootness. *See id.* at 396-97.

Here, the Tax Provisions of the PACT Act are in effect. For this reason, any constitutional mootness would be of the personal stake rather than the issue variety. The Supreme Court has looked to "practicalities and prudential considerations" to ensure that personal stake mootness doctrine is "flexible" rather than "rigidly formalistic." *Id.* at 404 n.11. To this end, even where the personal stake of a plaintiff with standing has dissipated over the course of litigation, a dispute is not moot so long as it evinces "sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions." *Id.* at 403-04 (citations omitted).

The government does not dispute that Mr. Gordon had standing to bring his lawsuit at the time he filed it. *See Gordon v. Holder*, No. 1:10-cv-01092, ECF No. 57, at 14 (D.D.C. Oct. 1, 2014). Moreover, this Court confirmed the suit was not moot at the time of the decision in *Gordon IV*, which affirmed the preliminary injunction. *See* 721 F.3d at 643. And, it is undisputed that Mr. Gordon engaged in delivery sales without paying state and local excise taxes required by the

14

challenged Tax Provisions. *See* JA 190 ¶¶ 8-9. Therefore, the only question presented is whether intervening events have mooted Mr. Gordon's challenge. The burden is on the government to make such a showing.

Where, as here, standing was undisputed, the party asserting mootness must establish that "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1335 (2013) (citation and internal quotation marks omitted). This entails a "heavy burden" to establish "that there is no reasonable expectation" the alleged injury will recur. *Fed. Corr. Complex Coleman, Fla. v. Fed. Labor Relations Auth.*, 737 F.3d 779, 783 (D.C. Cir. 2013) (citing, *inter alia*, *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)) (internal quotation marks omitted). In sum, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citation and internal quotation marks omitted).

## B. *The Dissolved Preliminary Injunction Causes Present Harm That Prevents Mootness*

With its dismissal of Mr. Gordon's challenge to the Tax Provisions, the district court's prior preliminary injunction of those Provisions was dissolved. *See Gordon V*, 2015 WL 1360941. Supreme Court precedent supports the existence of a live controversy where the plaintiff engaged in statute-violating behavior while a preliminary injunction was in place.

15

In *Edgar v. MITE Corp.*, a company challenged as unconstitutional an Illinois statute regulating takeover offers. 457 U.S. 624 (1982). The company obtained a preliminary injunction and made a takeover offer in a manner that violated the challenged statute. *Id.* at 627-28. While the case remained pending, the company withdrew the offer and had no intention to engage in any future prohibited behavior. *Id.* at 629.

The Court held that the company's request for permanent injunctive and declaratory relief invalidating the statute was not moot. *Id.* at 630. The Court explained that the state might seek to penalize the company for violating the Act while the preliminary injunction was in place. *Id.* Thus, "a reversal of the judgment [granting permanent and declaratory relief] would expose MITE to civil and criminal liability" for those past actions. *Id.* (footnote omitted). The fact that the preliminary injunction arguably would serve as "a complete defense to civil or criminal penalties" was of no moment, for that question would properly be addressed only "when and if the [state] initiates an action." *Id.* By contrast, the state's potential "action would be foreclosed if we agree . . . that the Illinois Act is unconstitutional." *Id.*

Likewise, here, when the preliminary injunction was dissolved, Mr. Gordon immediately owed back taxes to states and localities where he made delivery sales while the preliminary injunction was in place. Similarly, if Mr. Gordon does not

16

obtain declaratory and injunctive relief, federal, state, and local governments could pursue civil or criminal sanctions under the PACT Act for Mr. Gordon's violations of the Tax Provisions while the preliminary injunction was in place.

While Mr. Gordon might assert the preliminary injunction as a defense to such actions, that defense would only be resolved "when and if" a government sought back taxes or sanctions against Mr. Gordon. *See id.* By contrast, a ruling by this Court entering permanent and declaratory relief against the PACT Act "would . . . foreclose" any such action from the outset. *See id.*

Accordingly, as in *Edgar*, "the case is not moot", *id.*, because the immediate back taxes and risk of civil or criminal sanctions for Mr. Gordon's past conduct each provides a live controversy that satisfies Article III. We now discuss each harm in more detail below.

### C. *The case is not moot because immediate back tax obligations result from Mr. Gordon's past sales in violation of the PACT Act's Tax Provisions.*

The district court completely ignored Mr. Gordon's argument that dissolving the preliminary injunction gave rise to the PACT Act's imposition of back-tax liabilities to states and localities into which Mr. Gordon made tobacco delivery sales. This was erroneous because, where a tax obligation is contingent on the outcome of a constitutional challenge, the obligation is sufficient to establish justiciability.

17

Mr. Gordon's back-tax liabilities are akin to an award of money damages. *Cf. Pasquantino v. United States*, 544 U.S. 349, 355-57 (2005) ("Canada's right to uncollected excise taxes on the liquor petitioners imported into Canada is property in its hands.  This right is an entitlement to collect money from petitioners, the possession of which is something of value to the Government of Canada." (citation and internal quotation marks omitted)). This is an immediate and concrete injury entirely distinct from the risk of potential criminal or civil suits under the PACT Act against Mr. Gordon for prior delivery sales.  Put another way, the back-tax liability results solely from the denial of Mr. Gordon's requested relief, not from the risk of future enforcement of the Act by federal, state, or local authorities. Therefore, this case is neither constitutionally nor prudentially moot.

This case is unusually postured.  The injury consists of liability to third parties (states and localities), but arises exclusively from the validity of a federal law.  A declaration that the federal law is unconstitutional would prevent the injury—tax liability to states and localities where Mr. Gordon made delivery sales—from springing into effect in the first place.  This is because, but for operation of the challenged Tax Provisions, tax liability to those states and localities would remain with Mr. Gordon's delivery customers, and not shift to him as a delivery seller.

In the parallel proceedings in *Red Earth LLC v. United States*, the district court in Mr. Gordon's home district recognized this dynamic in its denial of the government's motion to stay the court's preliminary injunction pending appeal. The court observed that, "[i]f it is later determined that plaintiffs are required to comply with the state and local taxes of a particular jurisdiction, plaintiffs will need to pay the taxes owed at that point."  No. 1:10-cv-00530 (W.D.N.Y.), ECF No. 61 (Aug. 12, 2010), at 5-6; *see also Commonwealth Brands, Inc. v. Morgan*, No. G-2009-1681, 2009 WL 5332834 (Miss. Ch. Dec. 11, 2009) (entering a preliminary injunction against the enforcement of a state cigarette tax but adding that, "if the [state] ultimately prevails, it will be able to assess and collect the tax that accrues during the pendency of this litigation").  As the *Red Earth* court recognized, now that the preliminary injunction has been lifted, Mr. Gordon owes back taxes for the delivery sales he made while the preliminary injunction was in place.

Neither the government nor the court below disputed that the lifting of the preliminary injunction directly caused immediate back-tax liability for Mr. Gordon.  That undisputed fact alone dictates reversal.[7]  Because Mr. Gordon's

---

[7] Additionally, in recent challenges to the individual mandate provision of the Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148 (Mar. 23, 2010), courts have recognized that taxes arising from a statutory mandate, which are due in the event of non-compliance once the mandate goes into

19

back-tax obligations to states and localities where he made delivery sales are contingent on the outcome of his federal constitutional challenge, the obligations are sufficient to establish justiciability.[8]

## II. THE CASE IS NOT MOOT BECAUSE THERE REMAINS A MEANINGFUL RISK OF SANCTIONS UNDER THE PACT ACT FOR PRIOR DELIVERY SALES AS WELL AS ADVERSE COLLATERAL CONSEQUENCES IMPOSED BY THIRD PARTIES.

As noted above, the federal government may seek civil and criminal penalties against Mr. Gordon for violating the Tax Provisions. 15 U.S.C. §§ 377, 378(b); *see also Red Earth I*, 728 F. Supp. 2d at 259. Additionally, the various states and localities where non-compliant delivery sales were made may pursue civil penalties or money damages of their own. 15 U.S.C. § 378(c)(1)(A); *see also Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 12 (2010) (noting that taxing jurisdictions "would have concrete incentives to try" to bring a claim "for any lost

_____

effect, are sufficient to confer standing upon a challenger to the mandate. *See, e.g.*, *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 5 (D.C. Cir. 2014); *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 535-36 (6th Cir. 2011).

[8] As discussed *infra* in section III.A, the case is not prudentially moot either because a court should not refrain from exercising its equitable powers where a favorable judgment "will provide a real measure of redress." *Foretich v. United States*, 351 F.3d 1198, 1216 (D.C. Cir. 2003) (citation omitted). Here, Mr. Gordon has incurred immediate back-tax obligations to various states and localities which, but for the challenged Tax Provisions, would lie instead with his delivery customers.

tax revenue" against an interstate cigarette retailer who allegedly evaded local taxes).

**A.     *The government failed in its burden to negate the risk of federal prosecution or civil punishment for Mr. Gordon's prior actions.***

With respect to federal sanctions against Mr. Gordon, the district court erred by relying upon this Court's inapposite decision in *Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) (en banc), to conclude that the bare statement of current recommendatory intent of one ATF official regarding potential prosecution of Mr. Gordon was sufficient to moot this case.  Both *Clarke* and *Mesa Petroleum Co. v. Cities Service Co.*, 715 F.2d 1425 (10th Cir. 1983), concern applications of the Supreme Court's decision in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), which was discussed *supra* in section I.B of this brief.  The district court erred by finding conflict between *Mesa* and *Clarke,* when in fact they can be readily reconciled: neither allows the government to establish mootness with the type of equivocal declaration filed in this case

**i.     *Facts and reasoning of* Mesa**

*Mesa* involved a similar fact pattern to that in *Edgar*.  Mesa Petroleum Co. had tendered a hostile takeover offer for Cities Service Co., "a corporation with substantial assets and its principal executive offices in Oklahoma."  *Mesa*, 715 F.2d at 1427.  Rather than comply with the Oklahoma Take-Over Bid Act, Mesa instead sought to enjoin the Act as unconstitutional.  *Id.*  While Mesa's motion for

21

a preliminary injunction was pending, Gulf Oil Co. made a competing offer for Cities, which prompted Mesa to withdraw its own offer. *Id.* The district court nonetheless granted the preliminary injunction. *Id.* at 1427-28.

On appeal, Oklahoma argued that Mesa's withdrawal of its tender offer had mooted the litigation and, therefore, that the injunction could not have been validly entered. *Id.* at 1431. In assessing this argument, the Tenth Circuit noted the similarities of the case to *Edgar*, where the Supreme Court had held the case was not moot. *Id.*

The court rejected the argument that *Edgar* was distinguishable because Oklahoma's Administrator of Securities had expressed an "absence of [] intent" to enforce the Act against Mesa in the event the injunction were dissolved. *Id.* The court explained that "the putative enforcement intent of a particular state official is too slender a reed on which to rest our decision as to whether a live controversy is presented." *Id.* The court noted that the present Administrator could be replaced by another Administrator with a different enforcement intent. *Id.* The court thus concluded "there can be no doubt that the [action is] every bit as live as the action before the Court was in [*Edgar*]." *Id.* at 1431-32.

### ii.     *Facts and reasoning of* Clarke

*Clarke* concerned the aftermath of a D.C. Court of Appeals ruling that Georgetown University had violated the D.C. Human Rights Act by refusing to

22

allow a gay students organization equal access to its Law Center's facilities and services. *See* 915 F.2d at 700 (discussing *Gay Rights Coal. v. Georgetown Univ.*, 536 A.2d 1 (D.C. 1987)). In response to this ruling, Congress included language in D.C.'s 1989 appropriations statute that expressly made it lawful for a religiously-affiliated educational institution, such as Georgetown, to discriminate against "'any person or persons that are organized for, or engaged in, promoting, encouraging, or condoning any homosexual act, lifestyle, orientation, or belief.'" *Id.* (quoting Pub. L. No. 100-462, § 145 (1988)).

The D.C. Council declined to enforce this appropriations condition and sought a declaratory judgment that it was unconstitutional. *Id.* The district court granted the declaratory judgment and this Court affirmed. *Id.* However, between the time of this Court's decision affirming the declaratory judgment, and issuance of the mandate, the 1989 appropriations statute expired and was replaced by the 1990 appropriations statute, which omitted the contested condition. *Id.* The United States petitioned for rehearing en banc on the basis that the case was now moot and the declaratory judgment should be vacated. *Id.*

In contesting mootness, the Council argued that, were the declaratory judgment vacated, Council members risked prosecution under the Anti-Deficiency Act for knowingly and willingly expending appropriated funds without congressional authorization. *Id.* at 701 (citations omitted). In support of this

argument, the Council analogized to the Supreme Court's decision in *Edgar*. *Id.* (discussing 457 U.S. at 630).

This Court rejected the Council's argument. *See id.* The Court distinguished *Edgar* because, in that case, "[Edgar], who was charged with enforcing the Illinois act, had represented to the court of appeals that he intended to enforce the Act against MITE." *Id.* (citation and internal quotation marks omitted). By contrast, the Court observed that, in *Clarke*, the government had stated for the record at oral argument that the declaratory judgment invalidating the appropriations statute would be a "complete and adequate defense to any prosecution" for non-compliance with the statute. *Id.* (internal quotation marks omitted).

In light of this unequivocal declaration, the Court concluded that "the non-viability of any . . . prosecution" was "obvious." *Id.* Therefore, the Court held that the case was moot and that the declaratory judgment must be vacated "in the face of the government's formal legal concession of the existence of a complete defense." *Id.* at 702.

In reaching this conclusion, the Court added that the Tenth Circuit had reached a different conclusion in *Mesa*. *Id.* However, the Court explained that *Mesa* was factually distinguishable because the Administrator in that case "had simply told the court he had no current plans to prosecute." *Id.* The Court further

24

noted that the predecessor of the Administrator in *Mesa* had stated that his enforcement intentions would be determined by state law. *Id.* The Court observed that the Tenth Circuit may have treated these varying enforcement intentions as "quibblings" and "a deliberate equivocation" by the state, which "are a far cry from the government's representation and concession here" regarding "a complete defense" to prosecution. *Id.* at 702-03.

### iii.   Under **Clarke** *and* **Mesa,** *the case is not moot.*

Here, *Clarke* is distinguishable because the government has pointedly declined to concede that future prosecution of Mr. Gordon would be futile. Nor has the government unequivocally stated that it will not pursue Mr. Gordon for his past delivery sales. The declaration from a lone ATF official here is a "deliberate equivocation" at best. *Clarke*, 915 F.2d at 702. As in *Mesa*, an official's statement that he has "no current plans to prosecute" is insufficient. *Clarke*, 915 F.2d at 702-03.

Far from making a formal legal concession that it will abstain from pursuing Mr. Gordon, the U.S. Attorney's Office for the Western District of New York— Mr. Gordon's home district—issued a press release on June 12, 2013,[9] entitled

---

[9] *See* U.S. Attorney's Office for the Western District of New York, Press Release, PACT Act Now Fully Enforceable (Aug. 15, 2015), available at: http://www.justice.gov/usao-wdny/pr/pact-act-now-fully-enforceable.

"PACT Act Now Fully Enforceable," which stated that the government *does intend to prosecute* PACT Act violations.  This press release was issued immediately following the dismissal of *Red Earth LLC v. United States*—parallel litigation that involved the same Tax Provisions at issue in this case, and to which Mr. Gordon's trade association was a party.  In the press release, U.S. Attorney William Hochul, Jr. stated that "the federal government can now begin to enforce the full breadth and scope of the PACT Act."

This Court's decision in *Clarke* interpreted *Mesa* as turning on the Oklahoma Administrator's equivocation as to enforcement intent.  Here, the government similarly equivocated.  In the midst of this case's permanent-injunction remand proceedings, on October 1, 2014, the government submitted the declaration of Joseph Fox, the present Chief of the ATF's Alcohol and Tobacco Enforcement Branch.  The declaration provided, in pertinent part:  "Based on all evidence *currently* known to ATF, ATF has no intention *to seek or recommend enforcement* action against Gordon under the PACT Act."  JA 200 ¶ 35 (emphasis added).

This lawyerly declaration, made in the heat of litigation by one ATF official, after this Court had already affirmed a preliminary injunction of the Tax Provisions, should not subsume a Justice Department press release issued to the public concerning the very conduct being litigated in this case (delivery sales

originating from Seneca tribal lands within the Western District of New York).  *Cf.*
*United States v. W.T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953) ("It is the duty of
the courts to beware of efforts to defeat injunctive relief by protestations of
repentance and reform, especially when abandonment seems timed to anticipate
suit, and there is probability of resumption." (citation and internal quotation marks
omitted)).

More important is the equivocal language of the Fox declaration itself,
which is conditioned on "currently" available evidence, which could change.
Additionally, the declaration states only that the ATF has no intention "to seek or
recommend" enforcement—the declaration does not unequivocally state that the
ATF will not prosecute or enforce the Act against Mr. Gordon.

This leads to another flaw in the declaration, which is that the Justice
Department is tasked with prosecution, not the ATF.  15 U.S.C. § 378(b) ("The
Attorney General of the United States shall administer and enforce this chapter.");
*see also* 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of
litigation in which the United States, an agency, or officer thereof is a party, or is
interested . . . is reserved to officers of the Department of Justice, under the
direction of the Attorney General.").  Even if Mr. Fox stays in his current role at
the ATF, and is not replaced by a successor who chooses to enforce the PACT Act
against Mr. Gordon for his past actions, the declaration does not prevent the Justice

27

Department from seeking sanctions.  *See Mesa*, 715 F.2d at 1431-32.[10]

Accordingly, the core holding from *Clarke* is inapposite, as the government has refused to disavow prosecution of Mr. Gordon or concede that prosecution of him would be futile.  The Fox declaration is far more analogous to the statement in *Mesa* that the law enforcement official *did not presently intend to prosecute* than to any circumstances from *Clarke*.  Applying the equivocation test, the bare statement of current recommendatory intent, provided by one ATF official in the heat of litigation, is insufficient to meet the government's burden of showing that "it is impossible for a court to grant any effectual relief whatever" to Mr. Gordon.  *See Decker*, 133 S. Ct. at 1335 (citation omitted).  Accordingly, declaratory and injunctive relief would protect Mr. Gordon against the risk of enforcement under the challenged Tax Provisions.

As a final note, the district court suggested there was a circuit split between the Tenth Circuit's decision in *Mesa* and this Court's decision in *Clarke*.  *See Gordon V*, 2015 WL 1360941, at *4 ("a close reading of *Clarke* suggests that *Mesa Petroleum* would come out differently here" because *Clarke* "appears to contemplate that the enforcement intent of government officials is sturdy enough to

---

[10]  As this Court has previously done in the collateral consequences context, discussed *infra* in section II.C, it should take the isolated statement of one individual, concerning his current enforcement intentions, with a degree of skepticism.  *Cf. Thompson v. Mazo*, 421 F.2d 1156, 1162 n.24 (D.C. Cir. 1970).

sustain a conclusion of mootness").   As explained above, *Mesa* and *Clarke* are readily reconcilable and there is no need to create a circuit split.   The mere "enforcement intent of government officials" is manifestly *insufficient* to support mootness in either circuit, and *Clarke* stands only for the proposition that a binding government concession is sufficient to procure mootness.   That understanding is consistent with the Supreme Court's warnings about allowing official protestations to obtain mootness, and it is most consistent with the government's "heavy burden" to demonstrate mootness.

Indeed, as the Supreme Court recently admonished, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."   *Chafin*, 133 S. Ct. at 1023 (citation and internal quotation marks omitted).   Where the government proffers only one official's present enforcement intent, rather than a binding concession, a dispute, "however small," remains between the parties, and a citizen should not be forced to live under the Damoclean sword of a statute the courts have held to be likely unconstitutional.[11]

---

[11] For the same reasons, if the district court is correct that a circuit split exists on this issue, Mr. Gordon hereby preserves his argument that the Tenth Circuit approach is the proper one for the reasons given.

### iv. The Fox declaration does not satisfy the burden on the government to show it is "absolutely clear" Mr. Gordon's alleged harm cannot reasonably be expected to recur.

At the time Mr. Gordon filed his lawsuit, the government concedes that he had standing, presumably reflecting that the government *did* intend to imminently enforce the Act against Mr. Gordon at that time. In *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, the Supreme Court addressed the high burden facing a defendant that claims its voluntary compliance (e.g., non-enforcement of a policy) moots a case. *See* 528 U.S. 167, 190 (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." (citation omitted)).

In doing so, the Court revisited its prior holding from *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), which concerned a challenge to a police chokehold policy by the City of Los Angeles that became subject to a moratorium while the challenge was pending. The *Friends of the Earth* Court clarified that, if the *Lyons* plaintiff had initial standing (like Mr. Gordon), the moratorium "would not have mooted an otherwise valid claim for injunctive relief, *because the moratorium by its terms was not permanent*." 528 U.S. at 190 (citations omitted) (emphasis added).

Here, the equivocal Fox declaration, which simply states one official's current recommendatory intent concerning enforcement of ATF policy, does not

30

satisfy the government's high burden under *Friends of the Earth* to show that it will *never* seek civil or criminal sanctions against the Gordons.

**B.      *The district court failed to recognize that, were a declaratory judgment in effect, there would be no basis for state and local sanctions against the Gordons in the first place.***

Here, consistent with the Supreme Court's prediction in *Hemi*, 559 U.S. at 12, the Gordons have already faced civil proceedings under the PACT Act brought by the City of New York.  *See City of N.Y. v. Gordon*, No. 12-cv-4838, Am. Compl., ECF No. 32, at 40 ¶ b (S.D.N.Y. Sept. 28, 2012).  The *City of New York* complaint specifically noted the preliminary injunctions then-effective in both this case and *Red Earth*, and stated that the City sought redress for all "violations of those provisions of the PACT Act whose enforcement has not been enjoined."  *Id.* at 9 ¶¶ 25-27.  The government has presented no evidence that state or local taxing jurisdictions will abstain from pursuing Mr. Gordon under the Tax Provisions now that the injunctions in both this case and *Red Earth* have been dissolved.[12]

The district court nonetheless held that the prospect of state enforcement actions under the PACT Act could not sustain a live controversy because "a declaratory judgment of facial unconstitutionality . . . would not bind states or

---

[12] This absence of evidentiary support is especially telling because, in the district court proceedings, the government procured no fewer than six declarations from state officials on *other* topics.  *See* JA 197-98 ¶¶ 21-24.

localities because they are not parties to this case. . . .  It is insufficient for mootness purposes that a declaration of facial unconstitutionality . . . would have precedential effect in subsequent lawsuits."  *Gordon V*, 2015 WL 1360941, at *4 (citations omitted).

This, however, misses the point.  If not for the PACT Act, the tax burden for Mr. Gordon's prior delivery sales would remain with his customers and not shift to him.  In this unusual scenario where a federal statute imposes state and local tax obligations, a favorable judgment would leave the tax obligations with delivery customers, and thereby grant Mr. Gordon complete relief from those obligations.  Thus, if the Tax Provisions were invalidated, taxing jurisdictions could not pursue PACT Act lawsuits against the Gordons pursuant to those Provisions.  *See City of N.Y.*, Am. Compl. at 40 ¶ b (requesting "(i) money damages in an amount equal to the City's actual damages caused by the Gordon Defendants' violations of the PACT Act . . . and/or (ii) the civil penalties provided for under the PACT Act and/or (iii) disgorgement").  *But see id.* at 9 ¶¶ 25-27 (excepting from the prayer "violations of those provisions of the PACT Act whose enforcement has . . . been enjoined").

For this reason, it does not matter if a declaratory judgment of facial unconstitutionality were preclusive or even persuasive.  Were a declaratory judgment and permanent injunction in place, there would be no back taxes owed,

32

and no basis for PACT Act lawsuits, in the first place. The district court erred by failing to recognize this dynamic with respect to state and local sanctions.

**C.**   ***There is a meaningful risk of adverse third-party effects that flow as collateral consequences from allowing the PACT Act to take effect against Mr. Gordon.***

In traditional collateral-consequences cases, a litigant may attack his criminal conviction even after the sentence has expired because he is presumed to suffer collateral consequences from his conviction. Even though these consequences often flow from third parties not before the court, the litigant's challenge to his conviction is presumptively not moot. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1998) (citation omitted); *Sibron v. New York*, 392 U.S. 40, 50-55 (1968); *Justin v. Jacobs*, 449 F.2d 1017, 1019-20 (D.C. Cir. 1971). The same principles have been extended to the civil context and govern here.

Allowing the Tax Provisions to take effect likewise interferes with Mr. Gordon's relations with third parties—namely, the states and localities to which he owes back taxes by operation of the PACT Act. Just as a district court errs by overlooking the collateral consequences of a criminal conviction in dismissing a case as moot, it did so here by overlooking the collateral consequences of the adverse third-party effects of enforcing the Tax Provisions.

33

### i.    Collateral Consequences Generally

The collateral consequences exception[13] to mootness gives a court jurisdiction over a case that would otherwise be moot when certain collateral legal consequences exist.  The fact that collateral consequences might flow from parties not before the court is immaterial.  *See Ginsberg v. State of N.Y.*, 390 U.S. 629, 633 n.2 (1968).  In that case, Ginsberg was convicted for selling "girlie" magazines under a New York law that made it unlawful to sell such magazines to minors.  *Id.* at 631.  The trial judge had suspended Ginsberg's sentence and, by the time the case came before the U.S. Supreme Court, the one-year period for the trial judge to impose the sentence had expired.  *Id.* at 633 n.2.

Ginsberg had advised the Court that his conviction might result in the revocation of his municipal business license because his town had an ordinance providing that "the Commissioner of Buildings . . . may suspend or revoke any license issued, in his discretion, for . . . conviction of any crime."  *Id.*  Because of this potential collateral legal consequence by the non-party municipality, stemming from his conviction, the Court concluded that Ginsberg's constitutional challenge

---

[13] Arguably, collateral consequences is not an "exception" to mootness at all in that collateral consequences doctrine rests on the premise that the challenged harm is still ongoing and, therefore, a favorable judgment would benefit the litigant.  *See* Matthew I. Hall, *The Partially Prudential Doctrine of Mootness*, 77 GEO. WASH. L. REV. 562, 576-77 n.61 (2009).

to the criminal statute was not moot.  *Id.*  The parallels here are obvious:  even if

the defendants do not pursue Mr. Gordon, allowing the Act to take effect portends

tax consequences and enforcement risks vis-à-vis states and localities into which

Mr. Gordon made delivery sales.  These collateral consequences prevent mootness.

### ii. *Extension of Collateral Consequences to the Civil Context*

This Court has extended the collateral consequences doctrine to the civil

context.  *See, e.g.*, *Thompson*, 421 F.2d at 1162.[14]  In *Thompson*, a husband and

wife (Thompson) bought a house financed by two mortgages.  *Id.* at 1158.  The

husband proceeded to take out a third mortgage on the house without Thompson's

knowledge.  *Id.*  The husband defaulted on the third mortgage.  A foreclosure sale

was held, and an individual (Mazo) purchased the house subject to the first two

mortgages.  *Id.*

Mazo sued for possession and title in the D.C. Court of General Sessions.

*Id.*  In turn, Thompson filed a plea of title, arguing that her husband had forged her

signature on the third mortgage instrument.  *Id.*  The cause was certified to the

D.C. District Court, pending Thompson's posting of a bond.  *Id.*  Thompson

moved for waiver of the bond requirement due to poverty, which the Court of

---

[14] Other circuits have also extended collateral consequences to the civil context. *See, e.g.*, *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 88 (1st Cir. 2008); *In re Federated Dep't Stores, Inc.*, 44 F.3d 1310, 1315-17 (6th Cir. 1995); *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 490 (3d Cir. 1992) (citations omitted); *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989).

General Sessions denied. *Id.* Subsequently, Mazo prevailed upon Thompson's failure to post the bond. *Id.*

Mazo took possession of the house while Thompson appealed the ruling on title to the D.C. Court of Appeals. *Id.* Neither Thompson nor Mazo made payments on the second mortgage during this period because ultimate title and possession were in limbo pending the outcome of the appeal. *Id.* This led the second mortgage holder to foreclose. *Id.*

The D.C. Court of Appeals subsequently affirmed the judgment of the Court of General Sessions. *Id.* However, this Court granted Thompson's petition for allowance of appeal. *Id.*

Before this Court, Mazo argued that the case was moot because the second mortgage holder had already foreclosed on Thompson's interest in the house and there was no way Thompson could regain possession. *Id.* at 1162. The Court rejected this argument, holding that the case was not moot because the Court of General Sessions judgment might have collateral consequences affecting Thompson's liability for rent to Mazo and Mazo's liability for rent to the second mortgage holder. *Id.* at 1162 & n.23 (citing, *inter alia*, *Sibron*, 392 U.S. at 55). The Court reached this holding despite the fact that Mazo had represented to the Court during oral argument that he did not intend to pursue unpaid rent from Thompson. *Id.* at 1162 n.24.

36

This Court also extended collateral consequences to the civil context in *Justin*. *See* 449 F.2d at 1019-20. In that case, Justin challenged his prior civil involuntary commitment as a "sexual psychopath" even though he had already been released from the custody of his commitment hospital. *Id.* at 1018. This Court held that the collateral consequences from Justin's prior civil commitment as a "sexual psychopath" were sufficient to defeat mootness. *Id.* at 1020 (footnote omitted). In doing so, the Court reasoned that having an involuntary commitment on one's record could easily lead to many collateral legal consequences, such as the inability to vote, disqualification from jury service, a special examination for a driver's license in some states, limitations on gun ownership, and the facilitation of another involuntary commitment. *Id.* at 1019 (citations omitted). The Court presumed these potential consequences, and did not place the burden on Justin to demonstrate the likelihood that they would occur. *See id.* at 1019-20.

Finally, this Court has extended collateral consequences to a challenge to the legality of an executive order. *Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan* ("*AFGE*"), 870 F.2d 723, 726 (D.C. Cir. 1989). In *AFGE*, several unions challenged an executive order that restricted the collective bargaining rights of federal marshals. *Id.* at 725. The district court granted summary judgment in favor of the unions, requiring the President to include certain findings in a new executive order in order to comply with the statute governing labor relations for federal

37

employees.  *Id.*  While the case was on appeal to this Court, the President issued a new order with the required findings.  *Id.*

The government argued that this new order mooted the case.  *Id.*  However, this Court rejected the government's mootness argument on the basis of collateral legal consequences.  The Court noted that, after the original executive order, the Marshals Service had abrogated its collective bargaining agreement with certain marshals, which had deprived the marshals of grievance procedures and other benefits.  *Id.* at 726.  In response, the unions had filed unfair practice charges with the Federal Labor Relations Authority ("FLRA"), which was holding the charges in abeyance pending the outcome of the appeal to this Court.  *Id.*  The Court concluded that the collateral legal consequences pertaining to the unfair practice proceedings before the FLRA were sufficient to prevent mootness of the action before the district court.  *Id.* (citation and footnote omitted).

### iii.    *Application of Collateral Consequences to This Case*

Here, collateral consequences stem directly from allowing the Tax Provisions to take effect.  As previously discussed, the Tax Provisions are unusual in that they are part of a federal statute but create state and local tax consequences by shifting the burden for paying state and local excise taxes on delivery cigarettes from buyer to seller.  Mr. Gordon initiated a Due Process challenge to the Tax Provisions before they went into effect and prevailed in obtaining a preliminary

38

injunction before the district court, which this Court affirmed.  As he was entitled to do, Mr. Gordon did not comply with the Tax Provisions while the preliminary injunction was in effect.  JA 190 ¶¶ 8-9.  In practice, this meant he did not pay the cigarette excise taxes that would have remained his customers' obligations, rather than his obligation, in the event a permanent injunction was ultimately entered.

By dismissing Mr. Gordon's challenge on the basis of mootness, rather than reaching the merits of a permanent injunction, the district court dissolved the preliminary injunction.  This instantly created back tax obligations to those states and localities where Mr. Gordon made delivery sales but did not pay the taxes shifted upon him by the Tax Provisions.  It also created the risk of civil and criminal sanctions—at the federal, state, and local levels—for past failure to comply with those Provisions.

With respect to back tax obligations, the collateral consequences doctrine should apply with particular force because the consequences are immediate rather than speculative.  The tax obligations are presently in effect because Mr. Gordon already made the delivery sales and the preliminary injunction has been dissolved. But for the Tax Provisions, the obligation to pay those taxes would fall on Mr. Gordon's delivery customers rather than on him.

The Court need not speculate as to whether and which third parties might impose collateral consequences on Mr. Gordon.  That much is clear:  the states and

39

localities where he made delivery sales now hold accounts receivable against Mr.

Gordon for back taxes that they would not hold but for the PACT Act. *Cf.*

*Pasquantino*, 544 U.S. at 355-57 ("Canada's right to uncollected excise taxes on

the liquor petitioners imported into Canada is property in its hands." (citation

omitted)); *NYCTL 1996-1 Trust v. 209 Holding Corp.*, 704 N.Y.S. 2d 824, 824

(N.Y. App. Div. 2000). The states and localities can collect on those receivables at

any time, subject to defenses Mr. Gordon may raise.

Moreover, Mr. Gordon faces potential civil and criminal sanctions for his

past failure to comply with the Tax Provisions. In fact, as discussed above, the

City of New York has already sought civil sanctions from the Gordons, but only

for past non-compliance with those provisions of the PACT Act that were not

preliminarily enjoined. *See City of N.Y.*, Am. Compl. at 9 ¶¶ 25-27, 40 ¶ b.

Finally, it bears noting that, at a minimum, having an outstanding tax liability on

the books might inhibit the provision of a government benefit or privilege. This

too is a collateral consequence of enforcing the Tax Provisions. As a matter of

law, this dispute cannot be moot due to the adverse third-party effects of the Tax

Provisions.[15]

---

[15] As discussed *infra* in section III.A, the case is not prudentially moot either. As
previously noted, a court should not refrain from exercising its equitable powers
where a favorable judgment "will provide a real measure of redress." *Foretich*,
351 F.3d at 1216 (citation omitted). Here, Mr. Gordon faces a meaningful risk of

## III. THE DISTRICT COURT ERRED BY DISMISSING THIS CASE AS PRUDENTIALLY MOOT.

### A. *For the reasons already provided concerning constitutional mootness, this case is not prudentially moot either.*

#### i. *Applicable Law*

Prudential mootness arises from the notion that a party requesting equitable relief "must satisfy the court that relief is needed.  The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."  *W.T. Grant Co.*, 345 U.S. at 633 (injunctive relief); *see also A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961) (declaratory relief).

Determinations of prudential mootness may turn on "common sense or equitable considerations."  *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986) (citations omitted).  Such determinations "cannot be cabined by inflexible, formalistic rules, but instead require a case-by-case judgment regarding the feasibility or futility of effective relief should a litigant prevail."  *In re AOV Indus.*, 792 F.2d at 1147-48.

---

sanctions for prior non-compliance with the Tax Provisions, whether brought by the federal government or by a state or locality, such as the sanctions already sought by the City of New York.  This is in addition to collateral consequences Mr. Gordon faces from third parties that flow from enforcement of the Tax Provisions, such as the denial of a governmental privilege or benefit.  A declaratory judgment and permanent injunction for Mr. Gordon would invalidate any PACT Act basis for government-imposed sanctions or third party-imposed collateral consequences.

A court should not refrain from exercising its equitable powers where a favorable judgment "will provide a real measure of redress." *Foretich v. United States*, 351 F.3d 1198, 1216 (D.C. Cir. 2003) (distinguishing *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991)); *see also MBIA Ins. Corp. v. F.D.I.C.*, 816 F. Supp. 2d 81, 101 (D.D.C. 2011) ("The D.C. Circuit has stated that the primary test is whether a favorable judgment 'will provide a real measure of redress.'" (quoting *Foretich*, 351 F.3d at 1216)), *aff'd*, 708 F.3d 234 (D.C. Cir. 2013).

As with Article III mootness, a case becomes prudentially "'moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Ky. Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 406 (6th Cir. 2013) (quoting *Decker*, 133 S. Ct. at 1335) (extending *Decker* to the prudential mootness context and rejecting the argument that a case challenging permits issued by the U.S. Army Corps of Engineers was constitutionally or prudentially moot because conditions authorized by the permits remained in effect); *see also Citizen Ctr. v. Gessler*, 770 F.3d 900, 909 (10th Cir. 2014) (holding that a case was not prudentially moot where the challenged government policy remained partly in effect and, therefore, "a judgment for Citizen Center could provide meaningful relief").

### ii.     Analysis

Here, as a result of the dissolved preliminary injunction, Mr. Gordon has incurred immediate back tax obligations to various states and localities which, but for the challenged Tax Provisions, would lie instead with his delivery customers. A declaratory judgment would establish that those obligations belong to the delivery customers. Additionally, research has uncovered no decision in which a district court has dismissed a case on the basis of prudential mootness, and the court of appeals affirmed, where the plaintiff had a present, concrete injury comparable to the back taxes obligations here.

Moreover, Mr. Gordon faces a meaningful risk of sanctions for prior non-compliance with the Tax Provisions, whether brought by the federal government or by a state or locality. This is in addition to collateral consequences Mr. Gordon faces from third parties that flow from the Tax Provisions' taking effect. These harms and risks of future harm overcome the district court's purported discretion to decline to enter declaratory or injunctive relief, especially where four courts have already determined that the Tax Provisions are likely unconstitutional. *See Gordon IV*, 721 F.3d at 645-52; *Gordon III*, 826 F. Supp. 2d at 288-93; *see also Red Earth II*, 657 F.3d at 143-45; *Red Earth I*, 728 F. Supp. 2d at 248-52.

### B.     Penthouse International *is wholly inapposite.*

*Penthouse International, Ltd. v. Meese*, the sole prudential mootness case on which the district court relied, is wholly inapposite. *See* 939 F.2d 1011. In fact, it

43

illustrates the extreme attenuation of threatened harm that will support dismissal of a case under prudential-mootness doctrine.

In *Penthouse International*, the district court had issued a preliminary injunction against the "Meese Commission on Pornography," requiring it to withdraw a letter it had sent to retail distributors, such as 7-Eleven, which allegedly had caused some retailers (7-Eleven included) to cease distributing *Playboy* and *Penthouse* magazines. *Id.* at 1013-14. Critically, the Commission complied with the preliminary injunction by withdrawing its letter. *Id.* at 1014. The Commission then ceased to exist. *Id.* at 1019 (referring to "the demise of the Commission itself").

However, 7-Eleven and some other retailers elected not to return to distributing magazines like *Penthouse*. *Id.* at 1018. Penthouse continued to press for a permanent injunction and declaratory judgment on the basis that, without such relief, the retailers would not be comfortable carrying Penthouse's product in the future for fear of governmental condemnation or prosecution. *Id.* at 1018-19. This Court observed that "[i]t seems highly speculative that any action short of requiring the distributors to carry *Penthouse* would give [Penthouse its requested] relief." *Id.* at 1019. The Court concluded that "[w]here it is so unlikely that the court's grant of declaratory judgment will actually relieve the injury, the doctrine of prudential mootness—a facet of equity—comes into play." *Id.*

44

This case could hardly be farther afield. Most importantly, Mr. Gordon is asserting his own fear of prosecution—not that of a third party. The relief sought would directly remedy Mr. Gordon's injury by prohibiting the accrual of tax liability and preventing federal and state sanctions for past violations. Moreover, unlike the defunct Meese Commission, the federal government and state governments continue to exist and have every incentive to enforce their laws. While one ATF official stated that he "currently" did not "intend" to "recommend" taking action against Mr. Gordon, JA 200 ¶ 35, even his equivocal intent could be reversed by a future ATF official or the Justice Department, which alone may bring federal enforcement actions under the PACT Act. *See* 15 U.S.C. § 378(b); 28 U.S.C. § 516.

This case is more like *Foretich v. United States*. 351 F.3d 1198. There, this Court was confronted with a challenge to an alleged bill of attainder by Congress that limited a specific father's child visitation rights on the basis of suspected child abuse, notwithstanding prior rejection of the abuse claims by both the D.C. Superior Court and the U.S. District Court for the Eastern District of Virginia. *Id.* at 1205-06. The government conceded that the statute was aimed specifically at the father. *Id.* at 1204.

The father filed suit in June 1997, challenging the statute as an unconstitutional bill of attainder and seeking injunctive and declaratory relief. *Id.*

45

at 1208. The suit alleged that the statute negated multiple D.C. Superior Court orders and that it imposed an extraordinary injury to the father's reputation in the form of repeated media harassment and an impairment in his ability to work as an oral surgeon. *Id.* at 1209. At the time the suit was filed, the child was fourteen years old. *Id.* at 1208. The litigation proceeded, and the child was twenty-one years old by the time the case reached this Court. *See id.* at 1209. The mother, who had intervened in the litigation as a defendant, sought to dismiss the appeal to this Court as both constitutionally and prudentially moot because, as an adult, the D.C. Superior Court no longer had child-custody jurisdiction. *Id.*

This Court rejected both mootness arguments; with respect to prudential mootness specifically, the Court stated that, unlike in *Penthouse International*, a favorable judgment here would "provide a real measure of redress to Dr. Foretich." *Id.* at 1216 (distinguishing *Penthouse Int'l*, 939 F.2d at 1019 ("[w]here it is so unlikely that the court's grant of declaratory judgment will actually relieve the injury, the doctrine of prudential mootness—a facet of equity—comes into play.")). Accordingly, the Court proceeded to the merits and held that the statute was an unconstitutional bill of attainder. *Id.* at 1226.

Just as for the father in *Foretich*, a declaratory judgment for Mr. Gordon would "provide a real measure of redress" in that the tax obligations created by the PACT Act would shift back to his delivery customers, governments would have no

46

basis for pursuing him, and collateral consequences would be avoided.

Moreover, since this case is now on its sixth iteration of proceedings (three proceedings before the district court and three proceedings before this Court), the record is well developed. The questions of law have been painstakingly briefed. And the questions of fact remanded by this Court in *Gordon IV* were addressed on remand through stipulations. *See Gordon IV*, 721 F.3d at 651-52; JA 186-91. As a result, courts have given much guidance on the questions presented here and the case is ripe for decision in a concrete context.

### C. *Prudential mootness is a question of equity, and the equities here heavily favor Mr. Gordon.*

If Mr. Gordon's challenge is dismissed as moot, it is likely that the constitutionality of the Tax Provisions will evade review largely because the PACT Act has driven Mr. Gordon and other potential challengers out of business. There is nothing "equitable" about such an outcome.

Red Earth LLC and the Seneca Free Trade Association already have had to stipulate to dismissal of their similar, parallel challenges to the Tax Provisions in the *Red Earth* litigation after being forced out of business by the adverse effects of the PACT Act and associated litigation costs. This is despite the fact that, like Mr. Gordon, they had succeeded in obtaining a preliminary injunction from the district court, which was affirmed by the Second Circuit.

Mr. Gordon spent hundreds of thousands of dollars in attorneys' fees

47

vindicating his constitutional rights throughout numerous rounds of litigation, only to have his case dismissed as moot when his penury forced him to close up shop. It is troubling if a federal statute could completely evade review because it bankrupts all potential challengers before any court could reach the merits. This is especially so where the statute involves an unprecedented expansion of governmental power. *See Gordon IV*, 721 F.3d at 654 ("[W]hen a statute erases the boundaries that define a sovereign's jurisdiction, as the PACT Act does to the boundaries of state and local taxing jurisdictions, any legitimate application is pure happenstance."); *Red Earth II*, 657 F.3d at 145 ("The Supreme Court has never . . . held that a single sale into a state is insufficient for due process purposes, although its previous holdings suggest as much." (citation and internal quotation marks omitted)). Even more so where the statute has been held to be likely unconstitutional by four different courts. *See Gordon IV*, 721 F.3d at 645-52; *Gordon III*, 826 F. Supp. 2d at 288-93; *see also Red Earth II*, 657 F.3d at 143-45; *Red Earth I*, 728 F. Supp. 2d at 248-52. At a minimum, the inequity to Mr. Gordon—who faces tax liability and future legal action despite successfully litigating his case for over five years—counsels against a determination of prudential mootness.

Moreover, both this Court and the district court have already determined that the equities weigh in Mr. Gordon's favor if his Due Process argument is correct.

*See Gordon IV*, 721 F.3d at 652-53 (upholding the district court's decision that the balance of the equities and public interest weigh heavily in Mr. Gordon's favor); *Gordon III*, 826 F. Supp. 2d at 297 ("The Court finds that the balance of the equities favors Gordon with regard to the tax provisions. . . . The Court [also] agrees with Gordon that enforcement of a potentially unconstitutional law that would also have severe economic effects is not in the public interest."); *see also Red Earth II*, 657 F.3d at 146; *Red Earth I*, 728 F. Supp. 2d at 259.

Where a "case has been brought and litigated, often (as here) for years," to "abandon the case at an advanced stage may prove more wasteful than frugal." *Friends of the Earth*, 528 U.S. at 191-92. The Supreme Court has explained that such "sunk costs to the judicial system" counsel against mootness. *Id.* at 191-92 & n.5. There is no equitable benefit in discontinuing this litigation and forcing Mr. Gordon to challenge the same unconstitutional statute in future enforcement actions, or as a defense in suits to collect back taxes, in any number of federal, state, or local courts. This is especially so because Mr. Gordon's financial circumstances will likely prevent him from obtaining counsel in any future enforcement action.[16]

---

[16] Counsel for Mr. Gordon is now representing him *pro bono* in light of the drastic change in his financial circumstances. The Gordons were forced to proceed *pro se* in the latter half of the litigation brought against them by the City of New York, resulting in the imposition of a vastly overbroad consent decree. *See City of N.Y. v.*

49

Declining to reach the merits here leaves in place a statute that is facially unconstitutional and will inflict countless Due Process violations on delivery sellers. Under these circumstances, there is nothing equitable about avoiding a live controversy between the United States and an individual who has endured more than five years of litigation in an attempt to vindicate his rights.

### D. *Prudential mootness is generally predicated on the defendant's changed conduct—not the plaintiff's changed conduct.*

Application of the prudential mootness doctrine has generally been limited to circumstances where the "*defendant* has ceased its allegedly illegal conduct and is reconsidering or has reconsidered the policy that created the harm in the first place." *Conservation Law Found. v. Pritzker*, 37 F. Supp. 3d 254, 264 (D.D.C. 2014) (citing *W.T. Grant*, 345 U.S. at 632-36; *Chamber of Commerce*, 627 F.2d at 291 (emphasis added)). *Penthouse International* is the classic example, where the Meese Commission had permanently closed its operations.

While one official here has stated that the government has no "current[]" "intention" to "recommend" pursuing Mr. Gordon, JA 200 ¶ 35, the government has not reconsidered its policy of enforcing the PACT Act that caused the harm in

---

*Gordon*, ECF No. 60 (Mar. 25, 2013) (order granting motion of Anderson, Kill and Olick, P.C. to withdraw as counsel); ECF No. 127 (June 10, 2014) (consent decree). It is unlikely that the Gordons will be able to retain counsel in any future enforcement action, let alone counsel as experienced in this matter as Baker Botts L.L.P., which has now litigated these issues six times over five years.

the first place.  Indeed, the government has reinforced that policy.[17]

Rather, it is *Mr. Gordon* who has ceased his conduct by permanently going out of business.  Yet, because Mr. Gordon made delivery sales that did not comply with the Tax Provisions, *see* JA 190 ¶¶ 7-9, he continues to face the risk of sanctions for prior PACT Act violations, in addition to the concrete back tax obligations he already has incurred to various states and localities.  Neither the government nor the district court cited a case finding prudential mootness where the defendant has not wholly ceased its allegedly unlawful conduct and where the plaintiff faces both present harm and the risk of enforcement for prior actions.

## E.   *In light of the Supreme Court's recent decisions in* Lexmark *and* Driehaus, *this Court should abandon prudential mootness altogether.*

In a trilogy of recent decisions, the U.S. Supreme Court has repeatedly emphasized that, where "[j]urisdiction exist[s]," "a federal court's obligation to hear and decide a case is virtually unflagging."  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (citation and internal quotation marks omitted).  This is because federal courts "have no more right to decline the exercise of jurisdiction which is given, then to usurp that which is not given."  *Id.* at 590 (citation and

---

[17] *See* U.S. Attorney's Office for the Western District of New York, Press Release, PACT Act Now Fully Enforceable (Aug. 15, 2015), available at: http://www.justice.gov/usao-wdny/pr/pact-act-now-fully-enforceable.

internal quotation marks omitted).

While *Sprint* arose in the federal abstention context, the Court extended its admonition to the prudential-standing context in a decision issued just three months later. In *Lexmark*, the Court explained that the "zone of interests" test associated in recent years with the "prudential standing" label was, in fact, just a traditional question of statutory interpretation; that is, "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." 134 S. Ct. at 1387 (citations omitted). Aside from ordinary Article III justiciability requirements, "a court cannot apply its independent policy judgment" to dismiss an action "merely because 'prudence' dictates." *Id.* at 1388 (citation omitted).[18]

Another three months later, the Court extended *Sprint* and *Lexmark* to the prudential-ripeness context. In *Driehaus*, the respondents had argued that "prudential ripeness" factors, such as "whether the factual record was sufficiently developed, and whether hardship to the parties would result if judicial relief [were] denied at this stage," rendered the claims at issue nonjusticiable. 134 S. Ct. at 2347. The Court rejected this argument out of hand:

---

[18] Before *Lexmark*, the Supreme Court had characterized prudential standing as a collection of "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citation omitted), much like courts now describe prudential mootness. *Compare Chamber of Commerce*, 627 F.2d at 291 (prudential mootness "is a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration" (citation omitted)).

> [W]e have already concluded that petitioners have alleged a sufficient Article III injury. To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging.

*Id.* (quoting *Lexmark*, 134 S. Ct. at 1386; *Sprint*, 134 S. Ct. at 591) (internal quotation marks omitted).

The Sixth Circuit has noted the implications of *Driehaus* and *Lexmark* for prudential mootness. *See Kentucky v. U.S. ex rel. Hagel,* 759 F.3d 588 (6th Cir. 2014). In that case, the court was addressing the "capable of repetition, yet evading review" exception to mootness. *Id.* at 595. In addressing the exception, the court noted that, traditionally, "it [has] not always [been] easy to distinguish the constitutional aspects of mootness, grounded in Article III, from the prudential ones, grounded in policy." *Id.* at 595-96 n.3. However, the court observed that, in light of *Driehaus* and *Lexmark*, the Supreme Court has called into question the continuing applicability of the various "prudential" justiciability doctrines. Specifically, the court observed that the Supreme Court "has placed the continuing vitality of the prudential aspects of standing and ripeness, doctrines that sound in Article III and are closely related to mootness, in doubt." *Id.* (citing *Driehaus*, 134 S. Ct. at 2347; *Lexmark*, 134 S. Ct. at 1386-88).

Much like prudential standing pre-*Lexmark* and prudential ripeness pre-

*Driehaus*, the prudential-mootness doctrine improperly allows a court to exercise its independent policy judgment about whether to decide a case that satisfies the jurisdictional mootness requirements of Article III.  Indeed, the entire point of prudential mootness is that it would not be "prudent" in the court's mind to decide the case for some reason—despite having the power to do so under Article III. Because prudential mootness flies in the face of a court's "virtually unflagging" obligation to hear and decide a case where jurisdiction exists, the district court erred by using the doctrine as a basis for dismissing Mr. Gordon's challenge to the Tax Provisions.

To the extent the Court declines to hold that "prudential mootness" doctrine is categorically invalid, it should at least decline to extend its prudential-mootness precedents to this case.

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment below should be reversed, the preliminary injunction should be restored, and this matter should be remanded to the district court for proceedings on the merits of a permanent injunction and declaratory judgment concerning the unconstitutionality of the PACT Act's Tax Provisions.

Respectfully submitted,

/s/ Craig A. Schwartz
Craig A. Schwartz
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
(202) 639-7834
craig.schwartz@bakerbotts.com

Aaron M. Streett
*Counsel of Record*
Baker Botts L.L.P
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1855
aaron.streett@bakerbotts.com

*Counsel for Appellant*
*Robert Gordon*

Dated:  August 17, 2015

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,373 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman font.

Dated:  August 17, 2015

/s/ Craig A. Schwartz
Craig A. Schwartz
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
(202) 639-7834
craig.schwartz@bakerbotts.com

*Counsel for Appellant*
*Robert Gordon*

56

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 17, 2015, I electronically filed the foregoing Principal Brief for Appellant with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system. All Participants in this case registered with CM/ECF will be served by the CM/ECF system.

/s/ Craig A. Schwartz
Craig A. Schwartz
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
(202) 639-7834
craig.schwartz@bakerbotts.com

*Counsel for Appellant*
*Robert Gordon*

# ADDENDUM

# ADDENDUM CONTENTS

**Page**

**A.    Substantive Tax Provisions of the PACT Act**................................A1

15 U.S.C. § 376a(a)(3)(A).................................................................A1

15 U.S.C. § 376a(a)(3)(B).................................................................A1

15 U.S.C. § 376a(a)(4).......................................................................A1

15 U.S.C. § 376a(d)(1).......................................................................A1

**B.    Applicable Penalty Provisions of the PACT Act**.........................A2

15 U.S.C. § 377(a)(1).........................................................................A2

15 U.S.C. § 377(b)(1)(A)...................................................................A2

15 U.S.C. § 377(b)(2).........................................................................A2

**C.    Applicable Enforcement Provisions of the PACT Act**.................A3

15 U.S.C. § 378(a).............................................................................A3

15 U.S.C. § 378(b).............................................................................A3

15 U.S.C. § 378(c)(1)(A)...................................................................A3

15 U.S.C. § 378(c)(2).........................................................................A3

15 U.S.C. § 378(c)(4).........................................................................A4

15 U.S.C. § 378(d).............................................................................A4

For the Court's ease of reference, the pertinent provisions of the PACT Act have been reproduced in this Statutory Addendum.

**A.    *Substantive Tax Provisions***

> With respect to delivery sales into a specific State and place, each delivery seller shall comply with . . . all state, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific state and place, including laws imposing excise taxes; licensing and tax-stamping requirements; and the tax collection requirements set forth in subsection (d).

15 U.S.C. §§ 376a(a)(3)(A)-(B), 376a(a)(4).

> [N]o delivery seller may sell or deliver to any consumer . . . any cigarettes or smokeless tobacco pursuant to a delivery sale unless, in advance of the sale . . .
>
> > (A) any cigarette or smokeless tobacco excise tax that is imposed by the State in which the cigarettes or smokeless tobacco are to be delivered has been paid to the State;
> >
> > (B) any cigarette or smokeless tobacco excise tax that is imposed by the local government of the place in which the cigarettes or smokeless tobacco are to be delivered has been paid to the local government; and
> >
> > (C) any required stamps or other indicia that the excise tax has been paid are properly affixed or applied to the cigarettes or smokeless tobacco.

15 U.S.C. § 376a(d)(1).

A1

**B.**     *Applicable Penalty Provisions*

The applicable penalties for violation of the Tax Provisions are:

> [W]hoever knowingly violates this chapter shall be imprisoned for not more than 3 years, fined under Title 18, or both.

15 U.S.C. § 377(a)(1).

> [W]hoever violates this chapter shall be subject to a civil penalty in an amount not to exceed . . . the greater of $5,000 in the case of the first violation, or $10,000 for any other violation; or for any violation, 2 percent of the gross sales of cigarettes or smokeless tobacco of the delivery seller during the 1-year period ending on the date of the violation.

15 U.S.C. § 377(b)(1)(A).

> A civil penalty imposed under paragraph (1) for a violation of this chapter shall be imposed in addition to any criminal penalty under subsection (a) and any other damages, equitable relief, or injunctive relief awarded by the court, including the payment of any unpaid taxes to the appropriate Federal, State, local, or tribal governments.

15 U.S.C. § 377(b)(2).

### C.    *Applicable Enforcement Provisions*

The applicable enforcement provisions of the PACT Act are:

> The United States district courts shall have jurisdiction to prevent and restrain violations of this chapter and to provide other appropriate injunctive or equitable relief, including money damages, for the violations.

15 U.S.C. § 378(a).

> The Attorney General of the United States shall administer and enforce this chapter.

15 U.S.C. § 378(b).

> A State, through its attorney general, or a local government or Indian tribe that levies a tax subject to [15 U.S.C. § 376a(a)(3)], through its chief law enforcement officer, may bring an action in a United States district court to prevent and restrain violations of this chapter by any person or to obtain any other appropriate relief from any person for violations of this chapter, including civil penalties, money damages, and injunctive or other equitable relief.

15 U.S.C. § 378(c)(1)(A).

> A State, through its attorney general, or a local government or Indian tribe that levies a tax subject to [15 U.S.C. § 376a(a)(3)], through its chief law enforcement officer, may provide evidence of a violation of this chapter by any person not subject to State, local, or tribal government enforcement actions for violations of this chapter to the Attorney General of the United States or a United States attorney, who shall take appropriate actions to enforce this chapter.

15 U.S.C. § 378(c)(2).

(A) In general
The remedies available under this section and [15 U.S.C. § 377] are in addition to any other remedies available under Federal, State, local, tribal, or other law.

(B) State court proceedings
Nothing in this chapter shall be construed to expand, restrict, or otherwise modify any right of an authorized State official to proceed in State court, or take other enforcement actions, on the basis of an alleged violation of State or other law.

(C) Tribal court proceedings
Nothing in this chapter shall be construed to expand, restrict, or otherwise modify any right of an authorized Indian tribal government official to proceed in tribal court, or take other enforcement actions, on the basis of an alleged violation of tribal law.

(D) Local government enforcement
Nothing in this chapter shall be construed to expand, restrict, or otherwise modify any right of an authorized local government official to proceed in State court, or take other enforcement actions, on the basis of an alleged violation of local or other law.

15 U.S.C. § 378(c)(4).

Any person who holds a permit under [26 U.S.C. § 5712] (regarding permitting of manufacturers and importers of tobacco products and export warehouse proprietors) may bring an action in an appropriate United States district court to prevent and restrain violations of this chapter by any person other than a State, local, or tribal government.

15 U.S.C. § 378(d).

A4